The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Edward Garner, Jr. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between the plaintiff and the defendant employer.
3. The defendant employer is self-insured.
4. Plaintiff's average weekly wage is $472.87, which yields a compensation rate of $315.27 per week.
5. Plaintiff suffered an injury by accident of November 6, 1991, when he suffered a fall.
6. The defendant-employer admitted liability and the parties entered into a Form 21 Agreement which was approved by the Industrial Commission.
7. The key issues for consideration are as follows: (1) Was the plaintiff's right shoulder surgery of July 15, 1992 proximately caused by the accident of November 6, 1991; (2) Was the plaintiff's right-side neck surgery of May 21, 1993 proximately caused by the accident of November 6, 1991; and (3) Is plaintiff's counsel entitled to fees pursuant to N.C. Gen. Stat. § 97-88.1.
* * * * * * * * * * *
The Full Commission rejects the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. Plaintiff was an employee of the City of Charlotte on November 6, 1991 working as a carpenter. He was standing in a room next to a cabinet or bookcase which was about 4-feet wide and 8-feet tall made of three-fourths inch birch plywood and weighing about 100 pounds with a solid back on it, when an employee walked by the cabinet, the cabinet fell and the top corner of the cabinet hit plaintiff in the left clavicle and shoulder area, spinning him to the left and throwing him on his hands and knees.
2. Plaintiff was treated by Dr. S. J. Oweida beginning November 6, 1991 when he was diagnosed with a fracture of the left clavicle.
3. A Form 19 dated November 12, 1991 was filed with the Industrial Commission by the employer stating that "cabinet fell and hit left shoulder."
4. A Form 21 Agreement for Compensation for Disability was signed by the parties on November 25, 1991, and was approved by the Industrial Commission on December 18, 1991. This Agreement established that the employee sustained an injury by accident arising out of and in the course of his employment on November 6, 1991, and that the average weekly wage was $472.87 and the compensation rate was $315.27.
5. Plaintiff was paid temporary total disability compensation from November 14, 1991 through November 19, 1991 and he returned to work on November 20, 1991.
6. Plaintiff began experiencing some tingling and numbness in his right arm, shoulder, and hand within a day of two of the accident, which progressively got worse. He mentioned this arm pain to Dr. Oweida.
7. The Employee Medical Service office notes of various doctors and nurses who were working for the city on November 14, 1991, approximately one week after the accident state "his complaint now aside from the clavicular problem is spasm of the neck muscles and headache. We will start him on some Robaxin for this."
8. Right shoulder surgery was performed by Dr. Oweida on July 15, 1992.
9. The parties entered into a Form 26 — Supplemental Memorandum of Agreement as to Payment of Compensation — dated July 20, 1992 and approved by the Commission on August 13, 1992, providing for the payment of temporary total disability compensation from July 15, 1992 for "necessary weeks" as a result of the right shoulder surgery.
10. A Form 28B dated June 9, 1993 shows that the defendant paid the plaintiff 20 and 4/7ths weeks temporary total disability compensation during the recovery of the broken left clavicle from November 14, 1991 through November 19, 1991, and again from July 15, 1992 (the Form incorrectly shows 4/15/92) through November 22, 1992, during the recovery of the right shoulder surgery.
11. When plaintiff went back to work after the right shoulder surgery, on or about November 23, 1992, he did not continue doing carpentry work, but rather had a desk job answering the telephones. His right arm, shoulder and hand continued bothering him so he went back to see Dr. Oweida on November 25, 1992 complaining of continual throbbing pain. The plaintiff's right shoulder, arm, hand and neck did not improve and the symptoms continued after the shoulder operation.
12. On February 19, 1993 Dr. S. J. Oweida released plaintiff from his care after surgery on the right shoulder and gave him a 5% permanent partial disability of the right arm, which the defendant has refused to pay.
13. Dr. Oweida's office notes of April 7, 1993 state that an MRI scan of the cervical spine was finally done and it did "indeed document" that cervical spondylosis was causing some effacement of the thecal sac in the exiting nerve root on the right hand side, which was consistent with the radicular-type pain he was having down his right arm with tingling and relentless pain in the long and ring fingers. Since Dr. Oweida does not do anterior cervical fusion surgery, he referred plaintiff to Dr. Stephen W. Hipp, a neurosurgeon.
14. Dr. Hipp took a history from plaintiff relating the right arm and shoulder problem to the accident at work. Dr. Hipp reviewed the previous x-rays and MRI and scheduled a CT scan and myelogram for further diagnostic tests on May 6, 1993. This test showed a bone spur and possibly a ruptured disc between the sixth and seventh vertebrae to the right side which was compressing the seventh nerve. On May 21, 1993 Dr. Hipp operated on the C-7 area of plaintiff's neck for the disc herniation, performing an anterior cervical discectomy and fusion surgery. Dr. Hipp located a "moderate-sized extruded fragment of disc material" from a herniated disc when he was doing the operation. Plaintiff's pain, numbness and tingling in the right arm and shoulder were substantially eliminated as a result of Dr. Hipp's surgery.
15. Dr. Hipp rated plaintiff as having a 15% permanent partial disability of the cervical spine as a result of the neck surgery.
16. Dr. Hipp's office notes of October 4, 1993 state that the "ruptured disc is secondary to the injury he sustained" in the accident on November 6, 1991.
17. Defendant/employer, City of Charlotte, has refused to pay the medical bill of Dr. Hipp in connection with the neck surgery, has failed and refused to pay temporary total disability compensation for the time that the plaintiff was out of work with the neck surgery, and has failed and refused to pay permanent partial disability compensation based on the ratings of the right arm and neck.
18. Peggy Golden testified for defendant stating that they made a mistake in paying temporary total disability after the operation on the right shoulder because defendant thought the left shoulder was involved. This testimony and defendant's argument that it made a mistake in paying temporary total disability because they thought the left shoulder was involved is simply not credible. The office notes of Dr. Oweida show that copies of the office notes were sent to the City Medical Clinic to the attention of Dr. Naso after each visit. The March 24, 1992 office notes of Dr. Oweida clearly state that the right shoulder was involved, as does each of the office notes thereafter. The Employee Medical Services office notes dated March 25, 1992 state that "returns from Dr. Oweida, has had injection in his right shoulder . . ." The next office note on April 28, 1992 states "returning from visit to Dr. Oweida for rt. shoulder problems . . ." The note of June 30, 1992 states that Mr. Hawkins was scheduled "for surgery rt. shoulder 7/15/92." The typed office note dated August 10, 1992 states "Mr. Hawkins returns from Dr. Oweida's office for his follow-up surgery visit (right shoulder)." The August 31, 1992 office visit shows that "Mr. Hawkins returned from a visit with Dr. Oweida after surgery on the right shoulder."
19. The medical treatment and evaluation provided by Dr. Hipp was medically necessary and reasonable based upon the medical evidence contained in the record.
20. The Full Commission gives greater weight to the opinion of Dr. Hipp than the opinion of Dr. Oweida.
21. Defendant shall be entitled to a credit/offset of any amount it has paid plaintiff during the duration of this claim.
22. Defendant defended this matter based upon reasonable grounds.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On November 6, 1991 plaintiff sustained injuries by accident arising out of and in the course of the plaintiff's employment when a cabinet fell on the plaintiff causing a broken left clavicle and a ruptured disc in his neck, which produced right shoulder, arm and hand pain. N.C.G.S. § 97-2(6).
2. Plaintiff sustained a 5% permanent partial disability of his right arm. Defendant shall pay plaintiff $315.27 per week for 12 weeks pursuant to N.C.G.S. § 97-31(13).
3. Plaintiff sustained a 15% permanent partial disability of his neck (back). Defendant shall pay to plaintiff $315.27 per week for 45 weeks pursuant to N.C.G.S. § 97-31(23).
4. Defendant shall pay plaintiff $315.27 per week from May 19 to September 12, 1993 for temporary total disability benefits. However, the defendant is entitled to an offset of $242.34 per week for the entire time plaintiff received accident and sickness benefits.
5. Defendant shall pay all medical bills incurred or to be incurred as a result of plaintiff's injury by accident. This shall also include the $1,746.40 paid by plaintiff toward his medical bill which defendant's group medical insurance did not pay. This also includes the medical fees of Dr. Hipp. N.C.G.S. § 97-25.
6. Plaintiff is not entitled to attorney fees pursuant to N.C.G.S. § 97-88.1, as defendant has defended this matter based upon reasonable grounds.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
AWARD
1. Plaintiff's claim for additional workers' compensation benefits is GRANTED.
2. Plaintiff sustained a 5% permanent partial disability of his right arm. Defendant shall pay plaintiff $315.27 per week for 12 weeks.
3. Plaintiff sustained a 15% permanent partial disability of his neck (back). Defendant shall pay to plaintiff $315.27 per week for 45 weeks.
4. Defendant shall pay plaintiff $315.27 per week from May 19, 1993 to September 12, 1993 for temporary total disability benefits. However, the defendant is entitled to an offset of $242.34 per week for the entire time plaintiff received accident and sickness benefits.
5. Defendant shall pay all medical bills incurred or to be incurred as a result of plaintiff's injury by accident. This shall also include the $1,746.40 paid by plaintiff toward his medical bill which defendant's group medical insurance did not pay. This also includes the medical fees of Dr. Hipp.
6. Attorney fees of 25% of this entire award is hereby approved for plaintiff's counsel. This compensation has accrued and shall be paid in one lump sum.
7. Plaintiff is not entitled to attorney fees under N.C.G.S. § 97-88.1.
8. Defendant shall pay costs.
FOR THE FULL COMMISSION
 S/ _______________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ ____________________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
S/ ____________________ DIANNE C. SELLERS COMMISSIONER
CMV/cnp/mj 6/3/96